1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7    KARL ASHBAUGH,                          )        1:06-CV-00944 LJO JMD HC
                                             )
8                      Petitioner,           )
                                             )        FINDINGS AND RECOMMENDATION
9        v.                                  )        REGARDING PETITION FOR WRIT OF
                                             )        HABEAS CORPUS
10   JAMES A. YATES,                         )
                                             )
11                     Respondent.           )
     _____)

12

13        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

14   pursuant to 28 U.S.C. § 2254.

15                          **PROCEDURAL BACKGROUND**

16        Petitioner is currently in the custody of the California Department of Corrections and

17   Rehabilitation pursuant to a judgment of the Fresno County Superior Court.  (Pet. at 2; Answer at 1.)

18   Petitioner was charged with possession of a firearm by a felon (Cal. Penal Code § 12021(a)(1)) and

19   convicted by a jury on May 20, 2004.  (Answer at 1; Pet. at 2).  Petitioner was sentenced to a term of

20   six years.  (Pet. at 2).

21        Petitioner appealed his conviction to the California Court of Appeal, Fifth Appellate District,

22   on the grounds that the trial court erred in failing to grant Petitioner's motion to suppress, pursuant to

23   California Penal Code Section 1538.5.  (Id. at 3).  On September 19, 2005, the state appellate court

24   affirmed Petitioner's conviction finding that the denial of the suppression motion was proper.  (Lod.

25   Doc. 1).

26        In October 2005, Petitioner filed a petition for review to the California Supreme Court.  (Lod.

27   Doc. 2).  The Supreme Court summarily denied the petition on January 18, 2006.  (Lod. Doc. 3).

28        Petitioner subsequently filed the instant federal petition for writ of habeas corpus in the

1   Central District of California on June 23, 2006.  (Pet. at 1). Petitioner claims, as his sole grounds for

2   relief, that the trial court erred in admitting evidence obtained in an unconstitutional search and

3   seizure.

4          On June 27, 2006, this action was transferred to the Eastern District of California.

5          On February 13, 2008, Respondent filed an answer to the petition.

6                              **FACTUAL BACKGROUND**[1]

7          As police approached his parked car, defendant got out and fled on foot. An
   officer caught up with him, detained him, and brought him back to the car. A search
8   of the car led to the discovery of the gun defendant was convicted of possessing. On
   the basis of the flight, plus evidence the People now concede was inadmissible (a
9   second-hand description of the car), the magistrate denied defendant's motion to
   suppress the gun...
10         After police found a gun under the seat of a car he had been driving, defendant
   was charged with being a felon in possession of a firearm. (Pen.Code, § 12021, subd.
11  (a)(1).) The felony conviction on which the charge was based was a violation of
   Vehicle Code section 2800.2, fleeing from a pursuing police officer by car in willful
12  or wanton disregard for the safety of persons or property. The information also
   alleged, for sentence enhancement purposes pursuant to Penal Code section 667.5,
13  that defendant had served prison terms for that prior offense and for burglary (§ 459)
   and resisting or obstructing an officer (§ 69).
14         Defendant filed a motion pursuant to section 1538.5 to suppress the gun. In his
   papers, he contended that Fresno Police Officer Michael Orndoff approached him
15  after he legally parked his car and jogged to an apartment to knock on its door. At the
   doorway of the apartment, Orndoff instructed defendant to return to his car, which
16  was then searched, yielding the gun. Defendant argued that the search of the car, and
   the gun it uncovered, were fruits of the detention occurring when Orndoff directed
17  defendant to return to his car. The detention was not supported by a reasonable
   suspicion of wrongdoing, defendant contended, so it violated the Fourth Amendment.
18         The magistrate, Judge Kazanjian, heard the motion at the preliminary
   examination. Officer Orndoff was the sole witness. He testified that at about 6:30 in
19  the evening on January 23, 2002, he was riding with a sheriff's deputy as part of a
   gang enforcement sweep. The deputy's car was marked, and Orndoff was in uniform.
20  Within the previous few weeks, a detective told Orndoff to be on the lookout for "a
   small to mid size Chrysler product that was red or maroon," which might have been
21  connected to a homicide committed in the area Orndoff patrolled. At the detective's
   request, Orndoff had been collecting locations and license plate numbers of cars he
22  spotted that fit the description. Defense counsel objected on lack-of-foundation
   grounds to the questions and testimony about what the detective said, but his
23  objections were overruled.
          Orndoff and the deputy drove into a "public housing, low income
24  apartment-type complex looking to see what was going on." From about 150 feet
   away, Orndoff spotted a parked red Chrysler, and the officers drove toward it. The

25

26  ────────────────
   [1]These facts are derived from the unpublished opinion, wherein Petitioner is referred to as defendant, by the
27  California Court of Appeal issued on September 15, 2005. (Lod. Doc. 1).  Pursuant to the Antiterrorism and Effective Death
   Penalty Act of 1996, a determination of fact by the state court is presumed to be correct unless Petitioner rebuts that
28  presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); <u>Davis v. Woodford</u>, 384 F.3d 628, 638 (9th Cir.
   2004).  Petitioner does not challenge the state court's findings of fact with respect to the underlying events.

officers' car had only its headlights on as it approached, not its overhead lights or siren. As the officers' car approached the Chrysler, defendant emerged from the driver's door. The deputy parked near the Chrysler and Orndoff got out. Then a passenger emerged from the Chrysler. Defendant and the passenger then "walked-or ran into a front courtyard, front porch area" of an apartment. Orndoff also said defendant "ran or jogged" from the car to the porch. Orndoff followed. He did not call out to defendant as he followed or identify himself as a police officer. It was "already nighttime." Although Orndoff believed defendant got out of the car and ran because he knew law enforcement officers were approaching, he did not "know that he knew for sure...."

When Orndoff arrived at the apartment's porch, defendant and the passenger were there, and defendant "was ringing and knocking on the door" of the apartment. Orndoff asked them "what was going on and what they were doing, why they had gotten out of the car and come up to this door." Defendant said he had done nothing wrong, and continued to knock and ring. Orndoff "got between" defendant and the door and "asked him and the other man to both go back out to the car that they had gotten out of." Asked why he did this, Orndoff explained:

"Well, I was by myself in this confined front porch area with two people, one of which that I felt was trying to get away from law enforcement due to exiting the vehicle and running, and I felt that it would be better to get them out in the open where the other-where the deputy was at and away from the front door, I didn't know if maybe someone else might come out the front door and then pose a threat to me, so it was a-kind of a safety issue for me ."

The prosecutor and defense counsel entered into a joint stipulation that a detention occurred when Orndoff directed defendant to leave the porch and return to the car. No evidence was taken at the preliminary examination of anything that happened after that point.

After hearing argument that focused on defendant's alleged flight from the officers, the magistrate denied the motion to suppress, stating:

"[B]ased on the testimony of Officer Orndoff ... it appears, at least to this court, that flight alone is not what caused the officer to detain the defendant. I went back very carefully over my notes. There was a previous report from Officer Harris [i.e., the detective] of a red Chrysler-type car that was involved in a homicide in that area of town recently, this officer saw a red car, it was a Chrysler-type car, he saw the defendant and its passenger running from the car. Looking at the totality of circumstances of this car, the officer had the right car, the right color, even-when I say the 'right car [,'] the same make, the same color that he had been warned about, the proximity of the reported homicide at the time that he made the observation of the defendant and the passenger running from the car, the same proximity or area of town, and given those facts, the court believes ... it would be reasonable to conclude that if the officer had not investigated ... he could have been derelict in his duty[.] [G]iven the more than one factor, the court does believe that the officer did have reasonable grounds to stop the defendant and that what he did was reasonable and that probable cause did exist, so the court, based on all those factors and all the testimony does deny the defendant's motion to suppress."

After the ruling, defendant waived the remainder of the preliminary examination, and stipulated "that upon the detention that the court ruled was legal, that a search of a vehicle was done, and in that vehicle, under the ... driver's seat of the vehicle was found a weapon."

Section 1538.5, subdivision (i), permits a defendant who unsuccessfully moved to suppress evidence at the preliminary examination to renew the motion

before trial. Defendant filed a renewal motion, which was heard by Judge Peña. The motion was submitted on the transcript of the preliminary hearing; no new evidence was presented. The court again denied the motion, this time emphasizing not the red-car information the officer acted on, but the alleged flight:

> "Okay. The Court is going to find that the-and I realize that there's a question as to for certain whether or not the defendant saw the officer's vehicle, but I think certainly the officer was under the impression that the defendant had, and when the officer did contact the defendant it was after the defendant had basically jogged or run away. The officer merely was going to make a consensual encounter at the time, but because of the circumstances of the defendant running and then not responding with regard to the officer's questions, I believe that the Court's ruling is supported that the officer had an obligation to investigate.... I think under the circumstances there was reasonable cause to [detain defendant]. In light of that, the Court is going to deny the renewed motion at this time."

After a substitution of counsel, defendant filed a motion in limine to exclude the gun on the ground that the detention violated the Fourth Amendment. The trial judge, Judge Orozco, declined to entertain the motion. Defendant was not entitled to a third attempt to suppress the gun after the two motions authorized by section 1538 .5 were denied.

Defendant admitted that he was a felon at the time of the alleged offense and admitted to the three prior prison terms. The jury found him guilty of possessing a gun while a felon. The court sentenced defendant to six years in prison, consisting of the upper term of three years plus one year for each of the three prior-prison-term enhancements.

(Lod. Doc. 1 at 2-5).

## DISCUSSION

## I.    Jurisdiction and Venue

A person in custody pursuant to the judgment of a state court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. Furthermore, this action is in the proper venue as Petitioner's conviction arose from a judgment of the Fresno County Superior Court, which is in this judicial district. See 28 U.S.C. § 2241(d); also 28 U.S.C. § 84(b). Accordingly, the Court has jurisdiction and venue over this action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. Lindh v. Murphy, 521 U.S. 320, 326-327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), cert. denied, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97

F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)).  The instant petition was filed on August 10, 2005 and is consequently governed by the provisions of the AEDPA, which became effective April 24, 1996.  Lockyer v. Andrade, 538 U.S. 63, 70 (2003).

**II.    AEDPA Standard of Review**

   This Court may entertain a petition for a writ of habeas corpus by "a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

   Since Petitioner filed his petition after the effective date of AEDPA, his petition for habeas corpus "may be granted only if he demonstrates that the state court decision denying relief was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."" Irons v. Carey, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see* Lockyer, 538 U.S. at 70-71.

   As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id. (quoting Williams, 592 U.S. at 412). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

   Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)).  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; *see also* Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies

1   that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413.  "[A] federal court may

2   not issue the writ simply because the court concludes in its independent judgment that the relevant

3   state court decision applied clearly established federal law erroneously or incorrectly. Rather, that

4   application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable

5   application" inquiry should ask whether the state court's application of clearly established federal law

6   was "objectively unreasonable." <u>Id</u>. at 409.

7        Petitioner bears the burden of establishing that the state court's decision is contrary to or

8   involved an unreasonable application of United States Supreme Court precedent. <u>Baylor v. Estelle</u>,

9   94 F.3d 1321, 1325 (9th Cir.1996). Although only Supreme Court law is binding on the states, Ninth

10  Circuit precedent remains relevant persuasive authority in determining whether a state court decision

11  is objectively unreasonable.  *See* <u>Clark v. Murphy</u>, 331 F.3d 1062, 1069 (9th Cir. 2003); <u>Duhaime v.</u>

12  <u>Ducharme</u>, 200 F.3d 597, 600-01 (9th Cir. 1999).

13       AEDPA requires that we give considerable deference to state court decisions. The state

14  court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's

15  interpretation of its own laws.  <u>Souch v. Schaivo</u>, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*,

16  537 U.S. 859, 123 S.Ct. 231 (2002), *rehearing denied*, 537 U.S. 1149, 123 S.Ct. 955 (2003).

17  **III.   Review of Petitioner's Claim**

18       As the sole ground for relief put forth in this petition, Petitioner contends that evidence

19  instrumental to the finding of guilt in Petitioner's case was obtained in violation of the Fourth

20  Amendment.  Respondent correctly argues such a claim is not cognizable on federal habeas review.

21       Where Petitioner is asserting that the trial court misapplied California Penal Code § 1538.5 in

22  denying his motion to suppress the gun found, Petitioner has not established a cognizable habeas

23  claim.  *See* <u>Estelle v. McGuire</u>, 502 U.S. 62, 67 (quoting <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990)

24  in stating that, "federal habeas corpus relief does not life for errors of state law"); *see also* <u>Medley v.</u>

25  <u>Runnels</u>, 506 F.3d 857, 863 (9th Cir. 2007)(citing to <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005)

26  and <u>Estelle</u>, 502 U.S. at 67-68, for proposition that "a federal court may not overturn a conviction

27  simply because the state court misinterprets state law").

28       More importantly, a federal district court cannot grant habeas corpus relief on the ground that

1   evidence was obtained by an unconstitutional search and seizure if the state court has provided the

2   petitioner with a "full and fair opportunity to litigate" the Fourth Amendment issue.  Stone v. Powell,

3   428 U.S. 465, 494 (1976); Woolery v. Arvan, 8 F.3d 1325, 1326 (9th Cir. 1993), *cert denied*, 511

4   U.S. 1057 (1994); Hernandez v. City of Los Angeles, 624 F.2d 935, 937 n. 3 (9th Cir. 1980)(stating

5   that a "fourth amendment claim is not cognizable as a basis for federal habeas relief, where the state

6   has provided an opportunity for full and fair litigation of the claim").  The only inquiry this Court can

7   make is whether Petitioner had a fair opportunity to litigate his claim, not whether Petitioner did

8   litigate nor even whether the court correctly decided the claim.  Ortiz-Sandoval v. Gomez, 81 F.3d

9   891, 899 (9th Cir. 1996); *see also* Gordon v. Duran, 895 F.2d 610, 613 (9th Cir. 1990) (holding that

10  because Cal. Penal Code § 1538.5 provides opportunity to challenge evidence, dismissal under Stone

11  was necessary).

12          As noted by the Supreme Court in Stone, the purpose behind the exclusionary rule is

13  preventative–specifically to deter law enforcement from future unconstitutional conduct by removing

14  an incentive to disregard the Fourth Amendment.  Stone, 428 U.S. at 492.  However, excluding

15  evidence that is not untrustworthy creates a windfall to the defendant at a substantial societal cost.

16  *See* Stone, 428 U.S. at 489-90; Woolery, 8 F.3d at 1327-28.  The Supreme Court acknowledged in

17  Stone that permitting petitioners to raise search and seizure claims in a writ of habeas corpus would

18  not significantly deter Fourth Amendment violations.  Stone, 428 U.S. at 493.  As such, the Court

19  found that the balancing of deterrence and the substantial societal costs weighed against permitting

20  petitioners to raise search and seizure claims where the State provided the petitioners an opportunity

21  for full and fair litigation of their Fourth Amendment claims.  Id. at 493-494.  The Ninth Circuit has

22  likewise noted this rationale in discussing the high court's holding in Stone, stating that:

23          [I]n cases where a petitioner's Fourth Amendment claim has been adequately litigated
            in state court, enforcing the exclusionary rule through writs of habeas corpus would
24          not further the deterrent and educative purposes of the rule to an extent sufficient to
            counter the negative effect such a policy would have on the interests of judicial
25          efficiency, comity and federalism.

26  Woolery, 8 F.3d at 1326 (citing Stone, 428 U.S. at 493-494); *also* Withrow v. Williams, 507 U.S.

27  680 (1993) (stating that Stone's limitation on habeas relief rested on prudential concerns, namely

28  "the costs of applying the exclusionary rule on collateral review outweighed any potential advantage

1   to be gained by applying it there").

2        Here, Petitioner was afford a full and fair opportunity to litigate his Fourth Amendment claim

3   regarding the seized evidence.  The trial court heard two motions to suppress and a motion in limine

4   regarding the illegally obtained evidence.  (CT at 25-56; 82-86; 144).  At the first hearing to suppress

5   the evidence pursuant to California Penal Code Section 1538.5, Petitioner's trial counsel was

6   permitted to cross examine the only witness, Officer Orndoff.  (CT at 38-44).  Petitioner's trial

7   counsel further submitted a memorandum of points and authorities to the trial court.  (Id. at 13-19).

8   Counsel also presented oral arguments to the trial court at the hearing.  (Id. at 46-49).  Petitioner's

9   trial counsel again presented arguments at the second hearing concerning a motion under section

10  1538.5 to exclude the gun.  (Id. at 82-86).  A memorandum of points and authorities was also

11  submitted along with this second motion to suppress.  (Id. at 71-77).  Furthermore, Petitioner

12  submitted to the trial court a motion in limine to exclude the evidence along with a supporting

13  memorandum or points and authorities.  (CT at 122-142).  The trial court denied the motion.  (CT at

14  144).  Everything in the record demonstrates that Petitioner was afforded a full and fair opportunity

15  to litigate his Fourth Amendment claim.  Pursuant to <u>Stone v. Powell</u>, the Court cannot grant

16  Petitioner's request for habeas relief and the claim should be denied.

17  **RECOMMENDATION**

18       Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be

19  DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for

20  Respondent.

21       This Findings and Recommendation is submitted to the Honorable Lawrence J. O' Neill,

22  United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule

23  72-304 of the Local Rules of Practice for the United States District Court, Eastern District of

24  California.  Within thirty (30) days after being served with a copy, any party may file written

25  objections with the court and serve a copy on all parties.  Such a document should be captioned

26  "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall

27  be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the

28  objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §

636(b)(1)(c).  The parties are advised that failure to file objections within the specified time may

waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:**   **November 17, 2008**            **/s/ John M. Dixon**
                                    UNITED STATES MAGISTRATE JUDGE